**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| **KHADIJA AHMED and MOHAMUD ALI, each individually and as Parents and Natural Guardians of M.A., a minor** | * | **FILE NO.:** |
| | * | |
| 1701 Industrial Street, #10 | * | |
| Hudson, Wisconsin 54016 | | |
| | * | |
| Plaintiffs, | | |
| | * | **COMPLAINT AND DEMAND** |
| v. | | **FOR JURY TRIAL** |
| | * | |
| **OLMSTED MEDICAL CENTER** | | |
| Serve on Registered Agent Office | * | |
| 210 9th Street SE | | |
| Rochester, Minnesota 55904 | * | |
| | | |
| **PATRICIA ALINA AGUDELO SUAREZ, M.D.** | * | |
| Olmsted Medical Center | * | |
| 210 9th Street SE | | |
| Rochester, Minnesota 55904 | * | |
| | | |
| **KENNETH MICHAEL PALMER, M.D.** | * | |
| Olmsted Medical Center | * | |
| 1650 Fourth Street SE | | |
| Rochester, Minnesota 55904 | * | |
| | | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*   \*   \* \* \* \* \* \* \* \* \* \* \* \* \* \*

COME NOW the Plaintiffs, Khadija Ahmed and Mohamud Ali, each individually and as Parents and Natural Guardians of M.A., a minor, by and through their attorneys, Stephen C. Offutt, Dov Apfel, Sharon R. Morgan, Seth L. Cardeli and Janet, Jenner & Suggs, L.L.C., and do hereby allege the following:

## INTRODUCTION

This is a complex medical malpractice action arising from negligent health care provided to Khadija Ahmed and her unborn son, M.A., during her pregnancy and labor and delivery from April 25, 2011, to April 27, 2011, and the permanent injuries proximately caused by the Defendants' failure to comply with the applicable standards of care followed by other healthcare providers, physicians, nurses, clinicians, and hospitals acting under the same or similar circumstances. This case involves the failure to properly manage the pregnancy and labor and delivery of Khadija Ahmed; the failure to recognize and/or perform timely and meaningful interventions in the presence of a deteriorating fetal heart rate and fetal intolerance to labor; the failure to recognize and/or perform timely and meaningful interventions in the presence of deteriorating maternal condition during the pregnancy and labor and delivery; and the failure to perform timely and appropriate interventions to deliver the minor Plaintiff, M.A.

## PARTIES

1.      Plaintiff, M.A., is a citizen of the State of Wisconsin, residing at: 1701 Industrial Street, #10, Hudson, Wisconsin 54016. Plaintiff M.A. is a minor child and brings his cause of action by and through his parents and natural guardians, Plaintiffs Khadija Ahmed and Mohamad Ali.

2.      Plaintiffs, Khadija Ahmed and Mohamud Ali, are the parents and natural guardians of their son, M.A., and they are both citizens of the State of Wisconsin, residing with their son at: 1701 Industrial Street, #10, Hudson, Wisconsin 54016.

3.      Defendant, Olmsted Medical Center (hereinafter referred to as "OMC"), is a nonprofit corporation organized under the laws of Minnesota. At all times material

2

herein, OMC was a hospital engaged in the business of providing health care services in general, and specializing in obstetrical care in particular, acting directly, and by and through its employees, servants, and actual and/or apparent agents, including, but not limited to, Patricia Alina Agudelo Suarez, M.D., Kenneth Michael Palmer, M.D., A. Peters, R.N., D.M., R.N., Nellis, R.N., Kautzer, R.N., and/or the physicians, residents, and labor and delivery nursing staff at OMC caring for Ms. Ahmed and M.A. during the pregnancy and labor and delivery from April 25 to 27, 2011, all of whom OMC held out to the public as being competent, careful, and experienced in the care of pregnant women and newborn patients. OMC maintained offices and places of business in the County of Olmsted, in the State of Minnesota. Defendant OMC may be served at its Registered Office Address, 210 9th Street SE, Rochester, Minnesota 55904.

4.      At all material times herein, Defendant, Patricia Alina Agudelo Suarez, M.D. (hereinafter referred to as "Dr. Agudelo"), was a duly licensed physician by the State of Minnesota, authorized to practice obstetrics and gynecology, who worked individually and as an employee, servant, and actual and/or apparent agent of Defendant OMC, and was practicing within the scope of her employment, and was engaged in the practice of medicine in the County of Olmsted, in the State of Minnesota. Defendant Dr. Agudelo may be served at her primary place of business, Olmsted Medical Center, 210 9th Street SE, Rochester, Minnesota 55904.

5.      At all material times herein, Defendant Kenneth Michael Palmer, M.D. (hereinafter referred to as "Dr. Palmer") was a duly licensed physician by the State of Minnesota, authorized to practice obstetrics and gynecology, who worked individually and as an employee, servant, and actual and/or apparent agent of Defendant OMC, and

3

was practicing within the scope of his employment, and was engaged in the practice of medicine in the County of Olmsted, in the State of Minnesota. Defendant Dr. Palmer may be served at his primary place of business, Olmsted Medical Center, 1650 Fourth Street SE, Rochester, Minnesota 55904.

## JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). Plaintiffs are residents and citizens of the State of Wisconsin. Defendants Olmsted Medical Center, Dr. Agudelo, and Dr. Palmer, are Minnesota corporations and/or citizens with their principal place of business in the State of Minnesota. Therefore, the parties are diverse in citizenship.

7.      This Court has personal jurisdiction over Defendants pursuant to M.S.A. § 543.19, in that, at all relevant times described herein, Defendants: (a) transacted business in the State of Minnesota; and/or (b) committed acts in Minnesota causing injury.

8.      Plaintiffs' claim for relief exceeds $75,000, exclusive of interest and costs, therefore satisfying the amount in controversy requirement of 28 U.S.C. § 1332(a).

## GENERAL ALLEGATIONS AND AGENCY

9.      At all material times herein, a healthcare provider/patient relationship existed between OMC, Dr. Agudelo, Dr. Palmer, A. Peters, R.N., D.M., R.N., Nellis, R.N., and Kautzer, R.N., and Plaintiff Khadija Ahmed and her son, M.A., the minor Plaintiff.

10.     At all material times herein, Defendant OMC, in connection with its healthcare business activities, employed the services of physicians, residents, nurses, and other professional employees, including, but not limited to, Dr. Agudelo, Dr. Palmer, A.

Peters, R.N., D.M., R.N., Nellis, R.N., Kautzer, R.N., and other physicians, residents, and nursing staff at OMC, and held them out and warranted them to the public as competent, careful, and experienced in the medical and/or nursing care and treatment of obstetrical and newborn patients.

11.    At all material times herein, Defendant OMC was supervising and providing care, directly and vicariously through its employees, including Dr. Agudelo, Dr. Palmer, A. Peters, R.N., D.M., R.N., Nellis, R.N., Kautzer, R.N., and the physicians, residents, and/or labor and delivery nursing staff at OMC, all of whom were acting within the scope of their employment.

12.    At all material times herein, Defendant OMC had a duty to adopt, promulgate, and enforce policies and protocols and to provide training and continuing education to physicians, residents, physicians in training, nurse practitioners, nurses, and other healthcare providers who were employed and/or given privileges to practice and provide care to patients in the fields of obstetrics and neonatology.

## STATEMENT OF FACTS

13.    Plaintiffs incorporate herein by reference hereto the allegations contained in paragraphs 1 through 12, as though fully set forth herein.

14.    Khadija Ahmed (hereinafter referred to as "Khadija") was admitted to Olmsted Medical Center on April 25, 2011, at approximately 17:00 for induction of labor. She was 38 3/7 weeks pregnant and was Group B Strep positive, had an elevated blood pressure, pedal edema, had gained 5 lbs in the past week, and had urine protein greater than 300 mg/dl. Upon admission, fetal movement was noted and the external fetal

5

monitor showed a reassuring fetal heart rate pattern, both indicative of a neurologically intact and healthy baby.

15.     During the course of her labor, Khadija was given excessive amounts of medications without regard for the negative effects on mother and baby. These medications included Cervidil and Cytotec to ripen the cervix and/or induce labor, and extremely high rates of Pitocin to induce uterine contractions and effectuate a vaginal delivery.

16.     Throughout the labor, which took place over the course of three days, Khadija continued to suffer from severe preeclampsia and her baby was made to endure prolonged periods of excessive uterine activity, which depleted the fetal reserves and ultimately caused a deterioration in the fetal heart rate. Despite hours of decelerations in the fetal heart rate and a loss of variability, the Defendants individually, and through their employees, servants, and actual and/or apparent agents, continued to infuse Pitocin, a high-alert medication, at extremely high rates that placed Khadija and her fetus at great risk of injury.

17.     At or about 3:00 on April 27, 2011, Dr. Agudelo saw Khadija in her delivery room. At this point, Khadija had been at OMC for approximately 37 hours. Dr. Agudelo noted that Khadija was still suffering from severe preeclampsia, Pitocin was being infused at a rate of 17 mu/min, and that the cervix dilated only 4 cm, 90% effaced, and the fetus was still remote from delivery at -1/0 station. Despite the diagnosis of a prolonged labor, failing induction of labor, and minimal cervical changes, Dr. Agudelo's plan of care was to start Khadija on Magnesium Sulfate, to treat the severe preeclampsia,

give the patient an epidural, and to proceed with a cesarean section if there was no change or minimal change in the next two hours.

18.     During the next two hours, Khadija received the epidural anesthesia, the Magnesium sulfate, Ephedrine, and fluids. During this period of time, a labor and delivery nurse, Nurse Nellis, noted late decelerations in the fetal heart rate, along with decreased variability and a lack of accelerations, for which she turned off the Pitocin and called Dr. Agudelo, who did not come to see her patient. At or around 5:30, Nurse Nellis noted that the cervix remained dilated at 4 cm. Despite the previous plan to proceed to a cesarean section, Nurse Nellis restarted the Pitocin.

19.     During the remainder of the labor, Khadija continued to receive Pitocin, which subjected the fetus to excessive uterine activity and a deteriorating fetal heart rate. At no point did Dr. Agudelo, Dr. Palmer, or any of the other healthcare providers revisit the need for a cesarean section. Instead, they continued to increase the rate of Pitocin in an effort to force a vaginal delivery, despite deteriorating fetal and maternal conditions. The labor and delivery nurses repeatedly charted their acknowledgement that there were repetitive late decelerations, decreased variability, and a lack of accelerations. Despite these extremely nonreassuring findings, at no point did any of the physicians or nurses question the dangerous plan of care.

20.     At or about 17:30, Khadija's cervix was finally complete at 10 cm. Unfortunately for Khadija and her baby, they were forced to endure approximately 3.5 hours of pushing and approximately 9 expulsive efforts with a vacuum, before M.A. was ultimately delivered.

21.     At or about 21:01, M.A. was delivered by Dr. Palmer, who noted that he utilized a vacuum to assist with the delivery because of the maternal fatigue and a decrease in the short and long term variability of the fetal heart rate. The baby was severely depressed at birth and required extensive resuscitation and neonatal care. M.A.'s Apgar scored were 3, 5, and 6 at one, five, and ten minutes respectively. Later that evening, M.A. was transferred to the Mayo Clinic, where he was hospitalized until June 3, 2011.

22.     M.A. suffered a severe and permanent brain injury due to hypoxia and ischemia during the labor and delivery period. Today, M.A. suffers from the sequellae of that brain injury, including, but not limited to cerebral palsy, physical and motor disabilities, development delays, cognitive impairments, language deficits, and other permanent injuries.

23.     The risks and dangers to M.A. were obvious and should have been recognized by the physicians, residents, labor and delivery nurses, including, but not limited to Dr. Agudelo, Dr. Palmer, A. Peters, R.N., D.M., R.N., and they all knew or should have known that the failure to implement timely and meaningful interventions, and/or to expedite the delivery would expose M.A. to serious and obvious risks, complications and adverse conditions, capable of leading to brain damage, or even death.

24.     The foregoing joint, several, concurrent, individual, and combined negligent acts and/or omissions, as more particularly set forth below, directly and proximately caused M.A. to develop and be exposed to severe and prolonged hypoxia, ischemia, acidosis, and asphyxia, and to also suffer encephalopathy, seizures, severe and

permanent physical, developmental, neurological, cognitive, and emotional injuries, and other damages.

## COUNT I – MEDICAL NEGLIGENCE AS TO OMC

25. Plaintiffs incorporate herein by reference hereto the allegations contained in paragraphs 1 through 24, as though fully set forth herein.

26. The Defendant OMC, directly and/or vicariously through its employees, servants, and actual and/or apparent agents, including, but not limited to: Dr. Agudelo, Dr. Palmer, A. Peters, R.N., D.M., R.N., Nellis, R.N., Kautzer, R.N., and/or the physicians, residents, and labor and delivery nursing staff at OMC, owed a non-delegable duty to Khadija and M.A. to provide proper care and treatment and to use that degree of skill and diligence required by medical professionals, nursing professionals, hospitals, and medical corporations generally under the same or similar circumstances in the same or similar community.

27. The Defendant OMC, directly and/or vicariously through its employees, servants, and actual and/or apparent agents, including, but not limited to Dr. Agudelo, Dr. Palmer, A. Peters, R.N., D.M., R.N., Nellis, R.N., Kautzer, R.N., and/or the physicians, residents, and labor and delivery nursing staff caring for Khadija and M.A., failed to exercise such degree of skill and diligence required of healthcare providers acting under the same or similar circumstances in the same or similar community, and was negligent in the following particulars, among others, as may be further determined and established through legal discovery in this action:

      a. Failing to come to Khadija's bedside upon learning of a non-reassuring fetal heart rate tracing;

9

b. Failing to recognize a non-reassuring fetal heart rate tracing;

c. Failing to recognize signs of excessive uterine activity, fetal stress, fetal distress, fetal intolerance to labor, and severe preeclampsia;

d. Failing to get an obstetrician to Khadija's bedside in the presence of non-reassuring fetal monitor tracings, arrest of descent, and/or severe preeclampsia;

e. Failing to timely notify and effectively communicate with the attending obstetrician and/or other physicians concerning obvious nonreassuring signs of excessive uterine activity, fetal stress, fetal distress, and severe preeclampsia;

f. Failing to initiate timely and meaningful interventions and treatments;

g. Failing to recognize that the actions of Dr. Agudelo, Dr. Palmer, and/or other physicians increased the risk of harm and otherwise placed M.A. in harm's way by failing to provide a proper medical evaluation, failing to stop the Pitocin in the presence of nonreassuring fetal heart rate tracings, and for not taking appropriate steps to initiate an expedited delivery in the presence of a non-reassuring fetal heart rate tracing and obvious signs of fetal intolerance to labor, all of which the physicians and/or nurses knew or should have known may lead to serious fetal brain injury or even death;

h. Failing to invoke the chain of command and to act as a patient advocate;

i.  Ordering and administering multiple doses of drugs, such as Cervidil, Cytotec, and/or Pitocin for cervical ripening and/or induction of labor;

j.  Failing to decrease or turn off the Pitocin;

k.  Failing to expedite the delivery of M.A.;

l.  Failing to recognize and appreciate the signs and symptoms of fetal intolerance to labor, arrest of descent, and/or severe preeclampsia;

m.  Failing to timely perform a cesarean section;

n.  Failing to recognize the risks of fetal injury, including brain damage and death, in the presence of a non-reassuring fetal heart rate tracing with obvious signs of fetal intolerance to labor, and with a baby remote from vaginal delivery;

o.  Failing to communicate with the patient's other healthcare providers;

p.  Failing in other ways to manage Khadija's labor in accordance with the applicable standards of care, including, but not limited to, failing to communicate and act as a patient advocate;

q.  Failing to provide relevant information and informed consent to Khadija in order to allow her the opportunity to decide whether to continue with a trial of labor, when other interventions and treatments, such as expedited delivery via cesarean section, were reasonable and necessary; and

r.  Other negligent acts or omissions that may become apparent and established throughout the course of discovery.

28.   The Defendant OMC, directly, and/or vicariously through its employees, servants, and actual and/or apparent agents, including, but not limited to Dr. Agudelo, Dr. Palmer, A. Peters, R.N., D.M., R.N., Nellis, R.N., Kautzer, R.N., and/or the physicians, residents, and labor and delivery nursing staff caring for Khadija and M.A., further failed to exercise such degree of skill and diligence required of a healthcare provider and hospital acting under the same or similar circumstances in the same or similar community, and was negligent in the following particulars, among others, as may be further determined and established through legal discovery in this action:

    a.  Failing to adequately instruct, train, and/or supervise its employees;

    b.  Failing to provide appropriately trained and skilled personnel to care for Khadija and M.A. during labor and at the time of delivery;

    c.  Failing to establish and/or enforce appropriate policies, procedures and/or protocols for the management of patients during labor, for acting as effective patient advocates, and for providing relevant information and informed consent to patients under the same or similar circumstances as Khadija and M.A.;

    d.  Failing to establish and/or follow and/or enforce appropriate policies, procedures, guidelines, drills, training, and practices to properly recognize and treat non-reassuring fetal heart rate patterns, signs of fetal stress, fetal distress, fetal intolerance to labor, and excessive uterine activity;

    e.  Failing to properly credential, supervise, and/or provide adequate training to employees, including, but not limited to, Dr. Agudelo, Dr.

Palmer, A. Peters, R.N., D.M., R.N., Nellis, R.N., Kautzer, R.N., and/or the physicians, residents, and labor and delivery nursing staff caring for patients under the same or similar circumstances as Khadija and M.A.;

f.  Failing to enforce and/or promote and/or enforce appropriate chain of command policies, procedures, and/or practices in response to actions or inactions by any healthcare provider that may increase the risk of serious injury or death;

g.  Failing in other ways to implement and enforce policies, procedures, guidelines, drills, and training for the preparation and performance of emergency or stat cesarean sections; and

h.  Other negligent acts or omissions, which may become apparent and established throughout the course of discovery.

29.    As a direct and proximate result of the individual, successive, concurrent, joint, and several negligence of Defendants, Dr. Agudelo, Dr. Palmer, and OMC, directly and/or vicariously through its employees, servants, and actual and/or apparent agents, including, but not limited to Dr. Agudelo, Dr. Palmer, A. Peters, R.N., D.M., R.N., Nellis, R.N., Kautzer, R.N., and other physicians, residents, and nursing staff at OMC, as alleged herein, the minor Plaintiff, M.A., has received, and will continue to require, substantial medical, nursing, attendant, and related care, various types of therapies, such as physical, occupational, speech, rehabilitation, psychological, and pharmaceutical, and other care, including specialized devices, equipment, transportation, education, and housing, all of which shall require the expenditure of significant sums of money. In

13

addition, the minor Plaintiff, M.A., has further sustained a loss of income and diminished future wage earning capacity.

WHEREFORE, Plaintiffs, M.A., a minor child, by and through Khadija Ahmed and Mohamud Ali, his parents and natural guardians, and Khadija Ahmed and Mohamud Ali, individually, prays for judgment against the Defendant, Olmsted Medical Center, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with their costs and disbursements herein and interest allowable pursuant to Minn. Stat. § 549.09 (2012).

### COUNT II – MEDICAL NEGLIGENCE AS TO DR. AGUDELO

30.     Plaintiffs incorporate herein by reference hereto the allegations contained in paragraphs 1 through 29, as though fully set forth herein.

31.     The Defendant, Dr. Agudelo, owed a duty to Plaintiff Khadija and to minor Plaintiff M.A. to provide proper care and treatment and to use that degree of skill and diligence required of a healthcare provider acting under the same or similar circumstances in the same or similar community.

32.     The Defendant, Dr. Agudelo, acting individually and/or as an employee, servant, and/or actual and/or apparent agent of Defendant OMC, breached her non-delegable duty to the Plaintiffs by failing to exercise such degree of skill and diligence required of healthcare providers acting under the same or similar circumstances in the same or similar community, and she was negligent in the following particulars, among others, as may be further determined and established through legal discovery in this action:

14

a. Failing to come to Khadija's bedside upon learning of a non-reassuring fetal heart rate tracing;

b. Failing to recognize a non-reassuring fetal heart rate tracing;

c. Failing to recognize signs of excessive uterine activity, fetal stress, fetal distress, and fetal intolerance to labor;

d. Failing to initiate timely and meaningful interventions and treatments;

e. Ordering and administering multiple doses of drugs, such as Cervidil, Cytotec, and/or Pitocin for cervical ripening and/or induction of labor;

f. Failing to decrease, turn off, or withhold Cervidil, Cytotec, and/or Pitocin;

g. Failing to expedite the delivery of M.A.;

h. Failing to recognize and appreciate the signs and symptoms of fetal intolerance to labor, arrest of descent, and/or severe preeclampsia;

i. Failing to timely perform a cesarean section delivery;

j. Failing to recognize the risks of fetal injury, including brain damage and death, in the presence of a non-reassuring fetal heart rate tracing with obvious signs of fetal intolerance to labor, a deteriorating maternal condition, and a baby remote from vaginal delivery;

k. Failing to communicate with the patient's other healthcare providers;

l. Failing to adequately instruct, train, and/or supervise the physicians, residents, and/or labor and delivery nurses caring for Khadija and M.A.;

m.  Failing to establish and/or follow and/or enforce appropriate policies, procedures, and/or protocols for obstetrical patients under the same and similar circumstances as Khadija and M.A.;

n.  Failing in other ways to manage Khadija's pregnancy and her labor and delivery in accordance with the applicable standards of care, including, but not limited to failing to communicate and act as a patient advocate;

o.  Failing to provide relevant information and informed consent to Khadija in order to allow her the opportunity to decide whether to continue with a trial of labor, when other interventions and treatments, such as expedited delivery via cesarean section, were reasonable and necessary; and

p.  Other negligent acts or omissions that may become apparent and established throughout the course of discovery.

33.     As a direct and proximate result of the negligence of Dr. Agudelo, minor Plaintiff M.A. suffered damages as more specifically described in Count I.

WHEREFORE, Plaintiffs, M.A., a minor child, by and through Khadija Ahmed and Mohamud Ali, his parents and natural guardians, and Khadija Ahmed and Mohamud Ali, individually, prays for judgment against the Defendant Dr. Agudelo, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with their costs and disbursements herein and interest allowable pursuant to Minn. Stat. § 549.09 (2012).

## Count III – Medical Negligence as to Dr. Palmer

34.     Plaintiffs incorporate herein by reference hereto the allegations contained in paragraphs 1 through 33, as though fully set forth herein.

35.     The Defendant, Dr. Palmer, owed a duty to Plaintiff Khadija and to minor Plaintiff M.A. to provide proper care and treatment and to use that degree of skill and diligence required of healthcare providers acting under the same or similar circumstances in the same or similar community.

36.     The Defendant, Dr. Palmer, acting individually and/or as an employee, servant, and/or actual and/or apparent agent of Defendant OMC, breached his non-delegable duty to the Plaintiffs by failing to exercise such degree of skill and diligence required of healthcare providers acting under the same or similar circumstances in the same or similar community, and he was negligent in the following particulars, among others, as may be further determined and established through legal discovery in this action:

    a.  Failing to come to Khadija's bedside upon learning of a non-reassuring fetal heart rate tracing;

    b.  Failing to recognize a non-reassuring fetal heart rate tracing;

    c.  Failing to recognize signs of excessive uterine activity, fetal stress, fetal distress, and fetal intolerance to labor;

    d.  Failing to initiate timely and meaningful interventions and treatments;

    e.  Ordering and administering multiple doses of drugs, such as Cervidil, Cytotec, and/or Pitocin for cervical ripening and/or induction of labor;

    f.  Failing to decrease, turn off, or withhold Cervidil, Cytotec, and/or Pitocin;

    g.  Failing to expedite the delivery of M.A.;

h.  Failing to recognize and appreciate the signs and symptoms of fetal intolerance to labor, arrest of descent, and/or severe preeclampsia;

i.  Failing to timely perform a cesarean section delivery and endangering mother and child by negligently utilizing a vacuum;

j.  Failing to recognize the risks of fetal injury, including brain damage and death, in the presence of a non-reassuring fetal heart rate tracing with obvious signs of fetal intolerance to labor, a deteriorating maternal condition, and a baby remote from vaginal delivery;

k.  Failing to communicate with the patient's other healthcare providers;

l.  Failing to adequately instruct, train, and/or supervise the physicians, residents, and/or labor and delivery nurses caring for Khadija and M.A.;

m.  Failing to establish and/or follow and/or enforce appropriate policies, procedures, and/or protocols for obstetrical patients under the same and similar circumstances as Khadija and M.A.;

n.  Failing in other ways to manage Khadija's pregnancy and her labor and delivery in accordance with the applicable standards of care, including, but not limited to failing to communicate and act as a patient advocate;

o.  Failing to provide relevant information and informed consent to Khadija in order to allow her the opportunity to decide whether to continue with a trial of labor, when other interventions and treatments, such as expedited delivery via cesarean section, were reasonable and necessary; and

p. Other negligent acts or omissions that may become apparent and established throughout the course of discovery.

37.     As a direct and proximate result of the negligence of Dr. Palmer, minor Plaintiff M.A. suffered damages as more specifically described in Count I.

WHEREFORE, Plaintiffs, M.A., a minor child, by and through Khadija Ahmed and Mohamud Ali, his parents and natural guardians, and Khadija Ahmed and Mohamud Ali, individually, prays for judgment against the Defendant Dr. Palmer, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with their costs and disbursements herein and interest allowable pursuant to Minn. Stat. § 549.09 (2012).

## COUNT IV – PARENTAL CLAIMS

38.     Plaintiffs incorporate herein by reference hereto the allegations contained in paragraphs 1 through 37, as though fully set forth herein.

39.     As a further direct and proximate result of the individual, successive, concurrent, joint, and several negligence of Defendants, Dr. Agudelo, Dr. Palmer, and OMC, directly and/or vicariously through its employees, servants, and actual and/or apparent agents, including, but not limited to Dr. Agudelo, Dr. Palmer, A. Peters, R.N., D.M., R.N., Nellis, R.N., Kautzer, R.N., and other physicians, residents, and nursing staff at OMC, as alleged herein, and the resulting damages to their minor son, M.A., Plaintiffs Khadija Ahmed and Mohamud Ali have incurred, and will continue to incur in the future, expenses for the medical, surgical, nursing, therapeutic, rehabilitative and custodial care and attention for their son, as well as for specialized equipment, housing, education, and other needs to accommodate his medical conditions, all of which will exceed Seventy-Five Thousand Dollars ($75,000.00).

19

40.    As a further direct and proximate result of individual, successive, concurrent, joint, and several negligence of Defendants, Dr. Agudelo, Dr. Palmer, and OMC, directly and/or vicariously through its employees, servants, and actual and/or apparent agents, including, but not limited to Dr. Agudelo, Dr. Palmer, A. Peters, R.N., D.M., R.N., Nellis, R.N., Kautzer, R.N., and other physicians, residents, and nursing staff at OMC, as alleged herein, and the resulting damages to their minor son, M.A., Plaintiffs Khadija Ahmed and Mohamud Ali have been deprived, and will be further deprived, of an emotional relationship with their son, and a loss of services, companionship, and consortium to the present and into the future, all of which will exceed Seventy-Five Thousand Dollars ($75,000.00)

WHEREFORE, Plaintiffs Khadija Ahmed and Mohamud Ali demand entry of judgment against Defendants, Olmsted Medical Center, Dr. Agudelo, and Dr. Palmer, jointly and severally for a reasonable amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and disbursements as allowed by law.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues herein.

Stephen C. Offutt (Bar# 0387206)
Dov Apfel (*pro hac vice to be applied for*)
Sharon R. Morgan (*pro hac vice to be applied for*)
Seth L. Cardeli (*pro hac vice to be applied for*)
Janet, Jenner & Suggs, LLC
1777 Reisterstown Rd., Ste. 165
Baltimore, Maryland 21208
(410) 653-3200

*Counsel for Plaintiffs*